## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2017-CA-00650-COA

**RICHARD ESKRIDGE ON BEHALF OF MEMBERS OF JACOB CHAPEL MISSIONARY BAPTIST CHURCH**                                   APPELLANT

**v.**

**LOUELLA PEACOCK, SECRETARY ON BEHALF OF MEMBERS OF JACOB CHAPEL MISSIONARY BAPTIST CHURCH, REV. KENNETH WRAGGS AND BETTY QUINN, TREASURER**                                   APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2017 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEBRA MICHELLE GILES |
| ATTORNEY FOR APPELLEES: | HOWARD Q. DAVIS JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., GREENLEE AND TINDELL, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this dispute between conflicting groups within a church over electing the new pastor, we must decide whether the chancellor erred by appointing mediators and adopting their findings.

### FACTS AND PROCEDURAL HISTORY

¶2.     Reverend James White, the pastor of the Jacob Chapel Missionary Baptist Church in Sunflower County, Mississippi, died in December 2015. Two groups from the church

claimed authority to act on the church's behalf and over the church's three bank accounts. One group was led by Richard Eskridge, a deacon in the church. The other group was led by Louella Peacock, the church secretary/treasurer. The church's accounts were at Community Bank, North Mississippi, and totaled $8,348.94. As a result, the bank filed an action for interpleader against the church in Sunflower County Chancery Court. Peacock, on behalf of her group, answered the complaint for interpleader, claiming that the other group had no authority to act on behalf of the church. The chancellor granted the bank's request, and the funds were deposited in the court registry. Several months later, the other group, through Eskridge, filed an answer to the interpleader action, claiming that Brenda Bowie was the newly-elected pastor of Jacob Chapel. Bowie had been installed as the new pastor in March 2016, although Peacock alleged that the election to install Bowie was not conducted according to the church's by-laws. Peacock states that the church members met shortly thereafter and voted to remove both Bowie and Eskridge from any leadership roles.

¶3. The chancellor ordered the two groups and any other church members to undergo mediation conducted by the Sunflower County Baptist Association (SCBA) in order to resolve the dispute. Ultimately, a new pastor was elected, and the SCBA submitted its findings to the chancellor. The chancellor adopted these findings and ordered the chancery clerk to pay the funds jointly to the newly elected pastor Kenneth Wraggs and the treasurer Betty Quinn.

¶4. Eskridge now appeals, asserting the chancellor erred by: (1) ordering mediation; (2) basing its ruling solely on the SCBA's findings; and (3) failing to make findings of facts and

2

conclusions of law.

## STANDARD OF REVIEW

¶5.     An appellate court "will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Pilgrim Rest Missionary Baptist Church ex. rel. Bd. of Deacons v. Wallace*, 835 So. 2d 67, 71 (¶7) (Miss. 2003).

## DISCUSSION

### I.     Appointment of Mediators

¶6.     Eskridge first argues that the chancellor's decision to appoint mediators was premature.  Eskridge claims that the church had established by-laws for selecting a new pastor and had the by-laws been followed, the chancellor would not have needed to appoint mediators.  Eskridge also alleges that the "mediators had their own agenda and had no direction from the Court."[1]

¶7.     As our supreme court has stated, the "court's jurisdiction is limited to purely secular issues, and the court must not be involved in ecclesiastical issues." *Id.* at 72 (¶11) (citation omitted).  In *Pilgrim Rest*, the church did not have clear by-laws, so the chancellor established a procedure for the church members to vote on whether to retain the current pastor. *Id.* The supreme court later stated that "*Pilgrim Rest* represents a narrow exception to the longstanding practice of this Court to refuse to involve itself in ecclesiastical matters."

---

[1] According to Eskridge, the church was not a member of the SCBA and as a result, the mediators lacked authority over the church.  During the hearing, however, two people testified that the church was a member of the SCBA.

*Greater Fairview Missionary Baptist Church v. Hollins*, 160 So. 3d 223, 231 (¶29) (Miss. 2015). Unlike this case, *Hollins* involved a pastor who sought a temporary restraining order (TRO) after his congregation voted to terminate his employment. *Id.* at 233 (¶33). There, the chancellor issued the TRO, vacated the church's vote of termination, and ordered the church to hold another vote. *Id.* The supreme court reversed, holding that "a pastor who is unhappy about being terminated by a church simply does not present a secular controversy." *Id.*

¶8. This case is similar to *Pilgrim Rest*, not *Hollins*. The chancellor did not rule on who was entitled to be the new pastor. Instead, because the two groups were at odds and arguing over the interpled funds, the chancellor appointed mediators to oversee the election of the new pastor. At a hearing on the matter, the chancellor stated that "whatever [your] rules and regulations and by-laws are, they're going to be followed." And according to the church's minutes from the business meeting, the "election was carried out in a fair and proper way and in accordance with the [church's] by-laws as well as in accordance with the policies and procedures of the [SCBA] as indicated by" the moderators.

¶9. In this instance, we cannot find the "chancellor overstepped her bounds of jurisdiction in ordering an election when doing so was secular in purpose and sanctioned by other jurisdictions." *Pilgrim Rest*, 835 So. 2d at 72 (¶11) (citations omitted). This issue is without merit.

## II. Mediators' Findings

¶10. Eskridge next argues that the chancellor's "ruling was based solely on the decision of

the court-selected mediators who failed to follow the by-laws of the church." Eskridge further contends that the mediators failed to determine whether the members who voted during mediation were members of the church at the time of Reverend White's death.

¶11. Eskridge, however, has failed to show that the by-laws were not followed. In fact, as previously stated, the church minutes indicated that the by-laws were followed during the election process. The supreme court's conclusion in *Pilgrim Rest* is applicable here: "There is absolutely no indication of [the chancellor] imposing an ecclesiastical dictate on the congregation of Pilgrim Rest. On the contrary, she merely sought to establish a procedure in which the majority of the Church could be heard thereby preserving the peace." *Id.* at 73-74 (¶14). This issue is without merit.

### III. Findings of Facts

¶12. Eskridge finally contends that the chancellor failed to make findings of fact and conclusions of law. Here, much of Eskridge's argument is simply a reiteration of his previous arguments, which we found meritless. Eskridge does argue that the "the court also opines that the election was fair, but there is no indication of the method of the voting or the results." The chancellor relied upon the findings presented by the SCBA and the minutes of the church's business meeting—the meeting at which the election occurred.

¶13. Uniform Chancery Court Rule 4.01 states that "[i]n all actions where it is required or requested, pursuant to M.R.C.P. 52,[2] the Chancellor shall find the facts specially and state

---

[2] Mississippi Rule of Civil Procedure 52(a) states that: "In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly."

separately his conclusions of law thereon." Eskridge never asked the chancellor to make findings of facts and conclusions of law. And he has not shown that the chancellor was required to do so in this instance. This issue is without merit.

¶14. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**